[Cite as *State v. Marbury*, 2013-Ohio-1926.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25145 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-2913 |
| v. | : | |
| | : | |
| CEDRIC MARBURY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

### O P I N I O N

Rendered on the 10th day of May, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. #0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1} Defendant-appellant Cedric Marbury appeals from his conviction and sentence

for Kidnapping, Felonious Assault, and Having Weapons While Under Disability. Marbury contends that the guilty verdicts are against the manifest weight of the evidence because the victim's testimony was not credible. We conclude that the verdicts are not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

### I. Marbury Assaults and Kidnaps his Girlfriend

{¶ 2} Marbury moved in with Alonna Smith and her son in February 2011. Marbury and Smith had known each other for a number of years, and they had a romantic relationship that often was contentious.

{¶ 3} On August 13, 2011, Smith and Marbury had plans to attend a concert together. Prior to leaving for the concert, they began arguing. Smith and Marbury gave differing accounts of what happened next.

### A. Smith's Version of Events

{¶ 4} According to Smith, Marbury punched her in the jaw, knocking her to the floor. Tr. 31. As Marbury yelled and cursed, he got on top of Smith, held her arms down under his knees, and repeatedly hit her in the face and started choking her. Marbury demanded to know where Smith had hidden her gun. *Id.* When Smith told him that it was in the drawer next to them, Marbury dumped the drawer on the floor, grabbed the gun, chambered a bullet, put the gun to Smith's head, and stated, "Bitch, I will kill you in here." *Id.* at 32. The force with which Marbury held the gun against Smith's head left a scratch on her face. *Id.* at 37-38.

{¶ 5} While holding Smith down, Marbury put the gun aside and grabbed a straight

razor.  *Id*. 32.  Marbury began making slashing motions with the razor and stated, "Bitch, I'll cut your face."  He then cut Smith's nose.  *Id*.  Marbury subsequently put down the razor, picked up the gun, and began to yell at Smith, referencing a friend who had shot someone, leading Smith to believe that Marbury would shoot her.  *Id.* at 41-43.

{¶ 6}  Marbury eventually let Smith go into the bathroom to attend to her injuries.  At that time, Smith had a cut on her nose and a scratch on her face, along with a swollen face and neck.  *Id.* at 35-41, 43.  She also had bruises on both of her arms.  *Id.* at 36.  Smith told Marbury that she needed Epsom salt to reduce her swelling.  *Id.* at 43. Marbury drove Smith to a grocery store and brought the gun with him.  He dropped Smith off at the door to the store, but warned her that she had better come back to the car.  *Id.*  She could not locate any Epsom salt and returned to the car.  Marbury then drove her to a drug store and purchased Epsom salt while Smith waited in the car.  *Id.* at 44.

{¶ 7}  Marbury drove Smith back to their apartment, and alternated between being enraged and apologetic.  Smith sent a few text messages to a friend, alerting the friend that Marbury had jumped on Smith.  Smith also told her friend that Marbury would not leave, he had tried to kill her, and she was scared to call the police because Marbury had Smith's gun.  *Id.* at 46-49.

{¶ 8}  The next morning, Smith convinced Marbury to let her leave the home to go visit her mother.  *Id.* at 52.  Instead of going to see her mother, Smith went to see her best friend, and explained to her everything that had happened.  *Id.* at 53.

{¶ 9}  Smith returned to her apartment, and eventually was confronted by Marbury, who told her that he had gone to her mother's house, and discovered that Smith was not there.  *Id.* at

54. Marbury accused Smith of cheating on him, and lunged at her again. *Id.* A few minutes later, while Marbury was in the kitchen making breakfast, Smith ran out of the apartment to her car and drove away. Once she was safely away from her apartment, Smith called Marbury, told him to leave the apartment, and told him that she would call the police if Marbury did not leave Smith's gun in the apartment. *Id.* at 54-55. Marbury left, and Smith returned to the apartment. She called the Montgomery County Sheriff's Office and reported Marbury's actions. *Id.* at 56-57, 80-82.

**B. Marbury's Version of Events**

{¶ 10} Marbury conceded that he was arguing with Smith on August 13th. According to Marbury, however, Smith struck Marbury first during the argument, and Marbury responded by smacking her on her cheek. Tr. 107-108. Smith then attempted to get her gun from the drawer, but Marbury held her down to keep her from getting the gun. *Id.* At that point, Marbury got control of the gun and separated the gun from the magazine. *Id.* at 108.

{¶ 11} About an hour later, Smith left the house on her own in search of Epsom salt, but returned without any. Marbury then drove Smith to the store to get some Epsom salt. *Id.* at 108-109. The next morning, Marbury was washing clothes, and assumed everything was fine. *Id.* at 110. Marbury went to Ace Hardware and purchased some containers in which he planned to pack his belongings. Id. Marbury then told Smith that he had decided to move out of the apartment because of the previous night's altercation and the fact that Smith had a gun at the apartment. *Id.* at 110-111.

{¶ 12} Marbury denied assaulting Smith, choking her, and slashing her with a razor. *Id.*

at 109-111, 118-119, 122-123.   He also denied holding Smith against her will, and believed that Smith was making up the allegations against him because she did not want to lose him.   *Id.* at 111, 130-131.

## II. Course of the Proceedings

{¶ 13}   Marbury was indicted on one count of Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(2), one count of Kidnapping, in violation of R.C. 2905.01(A)(3), and one count of Felonious Assault, in violation of R.C. 2903.11(A)(2).   All three counts of the indictment had firearm specifications, and the Kidnapping and Felonious Assault counts of the indictment had an additional specification involving Marbury's status as a repeat violent offender.

{¶ 14}   Marbury waived his right to a jury trial.   Following a bench trial, the trial court found Marbury guilty on all three counts, and all specifications, as charged in the indictment. The trial court sentenced Marbury to an aggregate prison sentence of nine years.   From this judgment, Marbury appeals.

## III. The Verdicts Are Not Against the Manifest Weight of the Evidence

{¶ 15}   Marbury's sole assignment of error states:

THE TRIAL COURT'S VERDICTS SHOULD BE REVERSED AS THEY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16}   When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable

inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} Marbury contends that the trial court's verdicts are against the manifest weight of the evidence because the court "simply ignored the inconsistencies and the fundamental discrepancies in Ms. Smith's testimony." Brief, p. 8. According to Marbury, "[i]t defies any logic that Ms. Smith, claiming such abuse, would have so many opportunities to get away from the Defendant yet return on so many occasions during the time of the alleged criminal activity." *Id.* at 9.

{¶ 18} Smith testified in detail about being assaulted by Marbury and being held against her will. The State introduced photographs depicting the injuries sustained by Smith, and the pictures were consistent with Smith's testimony. Furthermore, the text messages sent by Smith were consistent with Smith's testimony. Before announcing its verdict, the trial court made the following statement:

> I have reviewed the evidence. I listened carefully to the evidence of all the witnesses. I've reviewed carefully the exhibits as well as the statutes applicable in this case.
>
> I've also considered the credibility of all of the witnesses. I find the

testimony of Ms. Smith to be very credible. I did not find the testimony of Mr. Marbury to be credible in many respects. Tr. 146.

{¶ 19} The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 20} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 21} The trial court decided to credit Smith's testimony over Marbury's testimony. Smith's testimony, along with the photographs and text messages introduced in evidence at trial, support the guilty verdicts. We reject Marbury's contention that Smith's testimony should be rejected solely because she failed to attempt an escape from Marbury at the earliest opportunity. Based on our review of the evidence presented at trial, we do not find that the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins, supra*. Marbury's sole assignment of error is

overruled.

## IV. Conclusion

{¶ 22}   Marbury's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Marshall G. Lachman
Hon. Mary K. Huffman